# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROCKY L. FREEMAN,** | : CIVIL ACTION NO. 1:16-CV-2422 |
| **Plaintiff** | : (Chief Judge Conner) |
| v. | : |
| **UNITED STATES OF AMERICA,** *et al.*, | : |
| **Defendants** | : |

## MEMORANDUM

On December 7, 2016, plaintiff Rocky Freeman ("Freeman"), an inmate confined at the Allenwood Federal Correctional Institution in White Deer, Pennsylvania ("FCI-Allenwood"), commenced this civil rights action. The matter is proceeding via an amended complaint. (Doc. 45). The amended complaint raises claims pursuant to Bivens[1], 28 U.S.C. § 1331, and the Federal Tort Claims Act ("FTCA")[2]. (Id.) Named as defendants are the United States of America, Unit Manager Joseph Lincalis, Probation Officer John D. McCarthy, Supervising U.S. Probation Officer Stephen L. Brighton, and James M. Fox, Chief U.S. Probation Officer. (Id.)

---

[1] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

[2] The Federal Tort Claims Act allows plaintiffs to seek damages from the United States for certain torts committed by federal employees. 28 U.S.C. §§ 1346(b), 2674.

Presently ripe for disposition is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56 by defendants Lincalis and the United States. (Doc. 47). For the reasons set forth below, the court will grant the motion for summary judgment. The court will also dismiss the action against defendants John D. McCarthy, Stephen L. Brighton, and James M. Fox pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

I. **Legal Standard**

When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so. Id.; Garcia v. Newtown Twp., 2010 WL 785808, at *3 (E.D. Pa. 2010). However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Third Circuit Court of Appeals has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered." Latham v. United States, 306 F. App'x 716, 718 (3d Cir. 2009) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996)). Accordingly, the court will treat defendants' filing as a motion for summary judgment.

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a), (c). The

burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 Supp. 2d at 315.

## II. Allegations of the Amended Complaint

In September 1996, Freeman was charged with narcotics conspiracy, two murders, and use of a firearm during and in relation to a crime of violence, in the United States District Court for the Eastern District of New York. (Doc. 45 ¶ 11). Following a jury trial, Freeman was convicted of the narcotics charge, but only one of the two murders.[3] (Id. at ¶ 12). During the sentencing phase of his criminal proceedings, Freeman objected to portions of his Presentence Report ("PSR") because he claims it incorrectly contained information about the murder for which he was acquitted. (Id. at ¶¶ 13-15). He claims the sentencing court ordered all of the inaccurate information to be stricken from his PSR, but the order was not carried out. (Id. at ¶ 16). Freeman discovered the alleged error in his PSR in 2016,

---

[3] Freeman was sentenced to two consecutive life terms plus five years' incarceration. (See Doc. 55-1 ¶ 1); see also Freeman v. United States, 2005 WL 1498289, *1 (E.D. N.Y. 2005).

3

after defendant Lincalis, his Unit Manager at FCI-Allenwood, prepared Escort Trip Authorization forms that contained inaccurate information. (Id. at ¶ 17).

Freeman alleges that the information about the second murder in his PSR caused the BOP to elevate his security and custody classifications. (Id. at ¶ 19). As a result, he was confined in a maximum security prison in Florence, Colorado ("USP-Florence"), where another inmate assaulted him with a razor blade. (Id. at ¶¶ 19-20). He also claims that he was placed in the Special Housing Unit ("SHU") for one year at the United States Penitentiary, Big Sandy, in Kentucky ("USP-Big Sandy"). (Id. at ¶ 21).

For relief, Freeman seeks compensatory damages in the amount of $3,075,000.00, punitive damages, and costs of the suit. (Id. at p. 4).

### III. Statement of Material Facts[4]

The BOP does not write, edit, or update an inmate's Presentence Report. (Doc. 50, Statement of Material Facts, ¶ 1; Doc. 54, Counterstatement of Material Facts, ¶ 1). An inmate's PSR is kept in the inmate's central file. (Id. at ¶ 2).

Correctional Systems receives and sends an inmate's central file when an inmate is either new to an institution or transfers out of an institution. (Id. at ¶ 3). When an inmate is released from an institution, Correctional Systems warehouses an inmate's central file until that inmate's period of supervised release expires. (Id. at ¶ 4).

---

[4] To the extent defendants' statement of material facts are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts and supporting evidence. (Docs. 50, 54).

Inmates are not permitted to maintain copies of their PSRs. (Id. at ¶ 5). When an inmate notes a mistake in his PSR, the PSR is corrected through a process that involves United States Probation, the inmate, and the inmate's attorney. (Id. at ¶ 6). Defendants contend that this process does not involve the BOP, whereas Freeman contends that the BOP is involved to the extent that it must initiate the process for the inmate pursuant to Program Statement 5800.11. (Id.) If an inmate notes a discrepancy in his PSR, a Correctional Systems specialist or a case manager will contact the BOP's Designation and Sentence Computation Center ("DSCC") to ascertain whether a new or amended PSR exists. (Id. at ¶ 7). The parties agree that the BOP does not make changes to inmate PSRs. (Id.)

The BOP does not discuss or make available an inmate's PSR to other inmates. (Id. at ¶ 8). Defendants state that the BOP does not have a policy that mandates that the Correctional Systems or Unit Team must verify the accuracy of an inmate PSR, nor is there a policy that requires the Correctional Systems or Unit Team to routinely seek out updated or amended PSRs. (Doc. 50 ¶ 9). Freeman contends that pursuant to Program Statement 5800.17, the unit staff must take reasonable steps to ensure the accuracy of challenged information. (Doc. 54 ¶ 9).

Defendant Joseph Lincalis was employed as a Unit Manager at FCI-Allenwood during all times relevant to the instant action. (Doc. 50 ¶ 10; Doc. 54 ¶ 10). As a Unit Manager at FCI-Allenwood, defendant Lincalis made comments on Escort Trip Authorization forms when inmates housed in his unit went on outside trips. (Id. at ¶ 11). Defendant Lincalis' comments on the Escort Trip Authorization

5

forms usually concerned the length of an inmate's sentence, information regarding prior outside trips, and information regarding the inmate's criminal history and underlying charge. (Id. at ¶ 12). Defendant Lincalis also included other information that he believed might assist correctional officers who escort the inmates on outside trips, such as mental health issues, history of violence, or escape attempts and history. (Id.)

Defendant Lincalis' comments on the Escort Trip Authorization forms are based on the particular inmate and situation, and his comments are intended to provide the correctional officers with information about the inmate's background for the correctional officers' safety and to promote public safety. (Id. at ¶ 13). The parties dispute whether defendant Lincalis used Freeman's PSR to make comments on the Escorted Trip Authorization forms. (Id. at ¶ 14). Defendant Lincalis contends that he utilized the Security/ Designation Data screen, which is found on the BOP SENTRY database. (Doc. 50 ¶ 14).

The parties agree that defendant Lincalis does not write, edit or update any inmate's PSR. (Doc. 50, ¶ 15; Doc. 54 ¶ 15). The parties also agree that defendant Lincalis does not write, edit, or update an inmate's Security/ Designation Data information in the BOP's SENTRY database. (Id. at ¶ 16).

Defendant Lincalis contends that when he made comments on Freeman's Escorted Trip Authorization forms, he did not have actual or other knowledge that his PSR contained inaccurate information. (Doc. 50 ¶ 17). Freeman contends that defendant Lincalis had the ability to access the sentencing minutes, judgment and

6

commitment order, or trial transcript, in order to verify if the PSR was accurate. (Doc. 54 ¶ 17).

The BOP does not have a policy that specifies what information defendant Lincalis needed to include or exclude on an Escorted Trip Authorization form. (Doc. 50 ¶ 18; Doc. 54 ¶ 18). Defendant Lincalis' comments on the Escorted Trip Authorization form were based on his experience as a BOP employee. (Doc. 50 ¶ 18; Doc. 54 ¶ 18). The information that defendant Lincalis included on a form was intended to provide the escorting correctional officers with information to ensure their safety and public safety. (Id.)

After the Escorted Trip Authorization forms were filled out, Freeman discovered the error in his PSR and informed his unit team that his PSR contained inaccurate information. (Id. at ¶ 19). The case manager assigned to Freeman's unit then contacted the United States Probation Office and obtained an amended PSR. (Doc. 50 ¶ 20; Doc. 54 ¶ 20).

## IV. Discussion

Defendants seek an entry of judgment in their favor based on Freeman's failure to establish an FTCA negligence claim against the United States, and failure to state a constitutional claim against defendant Lincalis. (Doc. 51). The court will first address Freeman's FTCA claim before turning to the Bivens claim.

### A. FTCA Claim

By virtue of the FTCA, Congress has consented to liability for money damages suits against the United States for injury or loss of property "caused by the

7

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The FTCA allows recovery for damages for personal injuries sustained during confinement in a federal prison by reason of the negligence of a government employee. 28 U.S.C. § 2674; United States v. Muniz, 374 U.S. 150 (1963).

In considering an FTCA claim, the law of the place where an act or omission occurs is to be applied. 28 U.S.C. § 1346(b). Because FCI-Allenwood is in Pennsylvania, Pennsylvania law applies. Under Pennsylvania law, a plaintiff must prove the following elements to establish a *prima facie* claim for negligence: "(1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the harm in question; and (4) the plaintiff incurred actual loss or damage." Krentz v. Consol.Rail Corp., 589 Pa. 576, 910 A.2d 20, 27 (Pa. 2006). In cases that involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence, meaning that the United States must "exercise reasonable care and diligence to protect the prisoner from danger, known to or which might reasonably be apprehended by him." See 18 U.S.C. § 4042; Turner v. Miller, 679 F.Supp. 441, 443 (M.D. Pa. 1987). The applicable law with respect to the burden and quantum of proof under the FTCA remains that of the state in which the alleged tortious conduct occurred. Hossic v. United States, 682 F. Supp. 23, 25 (M.D. Pa. 1987). Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the

proximate cause of his injury by a preponderance of the evidence. Baum v. United States, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982).[5]

The United States argues that Freeman cannot make the requisite showing to establish a *prima facie* negligence claim. (Doc. 51 at 14-17). Specifically, the United States contends there is no evidence that it breached its duty to Freeman, and that even if it did breach its duty, such a breach was not the proximate cause of Freeman's injury. (Id.) The court concludes that Freeman failed to carry his burden of proof on three of the four elements of a negligence claim under Pennsylvania law.

With respect to the first and second prongs, prison officials owe federal inmates a duty of care to protect them from unreasonable risks, however Freeman has shown no breach of this duty on behalf of the United States. 18 U.S.C. § 4042(a)(2), (3) (requiring the BOP to provide for the "protection" and "safekeeping" of inmates in its care). The record reflects that the BOP does not make any changes to an inmate's PSR, and the BOP was not aware of any error in Freeman's PSR. (Doc. 50 ¶¶ 1, 7, 17; Doc. 54 ¶ 1, 7). Instead, the BOP simply maintains the PSR in the inmate's central file and keeps the central file until the inmate is released from prison. (Id. at ¶ 2). The record further reflects that if an inmate notes a mistake in the PSR, the PSR is corrected with involvement of the United States Probation Office, the inmate, and the inmate's attorney. (Id. at ¶ 6). A Correctional Systems

---

[5] Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).

specialist or a case manager will then contact the BOP's DSCC to ascertain whether a new or amended PSR exists. (Id. at ¶ 7).

Defendants submitted a sworn declaration from the BOP Supervisory Correctional Systems Specialist, wherein he confirms that the BOP does not have any policy that requires prison staff to verify the accuracy of an inmate PSR, nor is there any policy that requires prison staff to routinely seek out updated or amended PSRs. (Doc. 50-1, Declaration of D. Krebs, BOP Supervisory Correctional Systems Specialist, ¶ 10). In response, Freeman cites to Program Statement 5800.17, which provides in part, "if an inmate challenges information in the PSR, staff instruct the inmate to prepare a written challenge, which staff then forward to the appropriate U.S. Probation Office (USPO). USPO procedures, however, do not allow changes or addendums to be made to the Presentence Investigation Report after sentencing, since it is a court document." (Doc. 59-1 at 12, BOP Program Statement 5800.17 § 11(c)). When Freeman notified his unit team of the error in his PSR, the case manager assigned to his unit promptly contacted United States Probation and obtained an amended PSR, in accordance with BOP policy. Thus, even if § 4042(a) imposes on the BOP a general duty of care to safeguard prisoners, Freeman failed to prove a breach of any BOP duty owed to him. Hossic v. United States, 682 F.Supp. 23, 25 (M.D. Pa. 1987) (the BOP is "not an insurer of the safety of a prisoner") (internal citations omitted).

Likewise, with respect to the third and fourth elements, the evidence fails to show any causal connection between the conduct of prison staff and Freeman's

resulting injury. Freeman claims that the error in his PSR "was one of the prime factors" in his custody and security classifications, which allegedly caused him to be designated to USP-Florence where he was assaulted by another inmate. (Doc. 45 ¶ 19). Freeman has failed to establish a causal connection between the error with his PSR and the assault at USP-Florence. As stated, the BOP was not aware of any error in Freeman's PSR. Once Freeman questioned the accuracy of his PSR—a court document that the BOP does not have legal authority to amend—the BOP contacted the United States Probation Office to verify its accuracy and obtain an amended PSR. The BOP cannot be faulted for relying on the PSR initially provided by the United States Probation Office. Under these circumstances, the BOP followed appropriate policy and did not abuse its discretion when it relied upon Freeman's initial PSR in making decisions related to his classification and security matters. There is no evidence that establishes a genuine issue of material fact that the BOP could have reasonably known that relying on the PSR provided by the United States Probation Office to determine Freeman's custody classification and security level would result in an assault by another inmate. The BOP is required only to protect a prisoner from danger that is known or can reasonably be apprehended, not to ensure the prisoner's safety. Hossic, 682 F.Supp. at 25.

In sum, the court finds that the BOP did not breach its duty owed to Freeman, and the conduct of BOP officials did not proximately cause Freeman's injury. Based on the foregoing, the United States is entitled to an entry of judgment in its favor on the FTCA claim.

### B. **Bivens** Claim

A Bivens action is the federal counterpart to an action filed under 42 U.S.C. § 1983. See Paton v. LaPrade, 524 F.2d 82 (3d Cir. 1975); Farmer v. Carlson, 685 F. Supp. 1335, 1338 (M.D. Pa. 1988). Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

#### 1. Due Process Claim

An inmate does not have a liberty interest in assignment to a particular institution or security classification, so long as the conditions and degree of the inmate's confinement fall within the sentence imposed and do not otherwise violate the Constitution. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976) (noting classification and eligibility for rehabilitative programs in federal prison system are matters delegated by Congress

12

to "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"); see also Sandin v. Connor, 515 U.S. 472, 484-86 (1995) (holding that liberty interest is implicated only where action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates "major disruption in his environment"); see also Marti v. Nash, 227 F. App'x 148, 150 (3d Cir. 2007) (inmate has no due process right to any particular security classification); Day v. Nash, 191 F. App'x 137, 139-40 (3d Cir. 2006) (upholding application of public safety factor to inmate's custody classification which prevented inmate's placement in a minimum security camp). Furthermore, the placement of prisoners within the federal prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Meachum, 427 U.S. at 225.

Freeman does not have a constitutional right to any particular security classification or right to the housing facility of his choice. See Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005) (stating that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); Marti, 227 F. App'x at 150 (an inmate cannot challenge a "Greatest Severity" PSF assignment because "no due process right[] to any particular security classification" exists) (citing Moody, 429 U.S. at 88 n. 9). To the extent that Freeman claims that the alleged error in his PSR violated his constitutional rights by subjecting him to harsher conditions of confinement at USP-Florence and USP-Big Sandy, he has failed to establish a violation of his constitutional rights. See Mundo-Violante v.

13

Warden Loretto FCI, 654 F. App'x 49, 51 (3d Cir. 2016) ("neither BOP policy nor the Due Process Clause gives a prisoner a liberty interest in a particular housing location or custody level while under the jurisdiction of correctional authorities") (citations omitted). Freeman's transfers were within the BOP's broad discretion with respect to internal operating decisions that served to preserve the order, security, and discipline within the prison facility. Therefore, the court finds no violation of a protected liberty interest with respect to Freeman's transfers. Furthermore, Freeman's placement in a maximum security prison and extended placement in the SHU both predate his designation to USP-Allenwood. (Doc. 45 ¶¶ 18-22). Consequently, defendant Lincalis is entitled to an entry of judgment in his favor on this claim.

### 2. Conditions of Confinement Claim

The Eighth Amendment protects prison inmates from cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of

14

serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. Id.

Freeman claims that defendant Lincalis placed false information from his PSR on an Escorted Trip Authorization form and, as a result, he was required to wear more restrictive restraints during an escorted medical trip and was not permitted an interim stop to use a restroom while in transit. (Doc. 45 ¶ 23).

As to the objective prong, the court finds that the use of restraints during an escorted medical trip, and not stopping during transit, are not sufficiently serious to constitute denial of the minimal civilized measure of life's necessities. See e.g., Key v. McKinney, 176 F.3d 1083 (8th Cir. 1999) (holding that inmate who was restrained in handcuffs and leg shackles did not suffer a serious deprivation of the minimal civilized measure of life's necessities, where, although shackles made it more difficult for inmate to sleep and relieve himself, he was not deprived of bedding, food, or bathroom facilities, and he was checked by a nurse and guard at regular intervals); see also Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("only those deprivations denying 'the minimal civilized measures of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation") quoting Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 346). The record reflects that based on the information in the Escorted Trip Authorization form, Freeman was placed in restrictive restraints during an outside medical trip. (Doc. 50, ¶¶ 11-13, 18; Doc. 54 ¶¶ 11-13, 18). The record also reflects that Freeman was not subjected to

unreasonable restrictions, and the restraints were used to ensure the safety of correctional officers and the public safety. (Id.)

As to the subjective prong, Freeman has not established that defendant Lincalis was deliberately indifferent to his health or safety. The record reflects that defendant Lincalis does not write or edit any inmate PSRs. (Doc. 50 ¶ 15; Doc. 54 ¶ 15). Instead, he relies on the information available to him when completing the Escorted Trip Authorization forms, and his comments are based on his experience as a BOP employee. (Doc. 50 ¶ 18; Doc. 54 ¶ 18). The record further reflects that the use of the restraints was both reasonable and necessary based on the information in the Escorted Trip Authorization form, and that prison staff used the restraints in a manner which was directly linked to the penological goals of ensuring institutional and public safety. Furthermore, Freeman does not state that he remained in restraints for an excessive amount of time[6], and he fails to establish that he suffered any physical or mental injuries as a result of the restraints. In opposing a motion for summary judgment, Freeman cannot rely on his unsupported allegations that he suffered "anxiety, discomfort and undue embarrassment" during the escorted medical trip. (Doc. 56 at 6). The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" and cannot survive Rule 56 scrutiny by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Thus, the record clearly demonstrates that defendant

---

[6] The record is unclear as to the precise duration of Freeman's placement in restraints; however, there is no allegation or indication that he was placed in restraints for a prolonged period of time.

16

Lincalis did not deprive Freeman of any life necessity, in violation of the Eighth Amendment. See Griffin v. Vaughn, 112 F. 3d 703, 709 (3d Cir. 1997) (finding that only conditions that deprive the prisoner of one of life's necessities, such as food, water, clothing, shelter, and medical care are unconstitutional).

"To overcome a motion for summary judgment, a plaintiff must come forward with evidence from which it can be inferred that the defendant-officials were . . . knowingly and unreasonably disregarding an objectively intolerable risk of harm." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 (3d Cir. 2010) cert. denied, 562 U.S. 1272, 131 S.Ct. 1614, 179 L.Ed.2d 502 (2011) (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001)). Freeman failed to meet his burden with respect to this claim. Consequently, defendant Lincalis is entitled to summary judgment as to this claim.[7]

## V. Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

---

[7] The court notes that defendant Lincalis asserts a qualified immunity defense for the first time in his reply brief in support of his motion for summary judgment. (Doc. 59). As a general rule, courts may decline to consider arguments raised for the first time in a reply brief. See Anspach v. City of Philadelphia, 503 F.3d 256, 259 n.1 (3d Cir. 2007) (observing that absent compelling circumstances, "failure to raise an argument in one's opening brief waives it"); see also Alston v. Forsyth, 379 F. App'x 126, 129 (3d Cir. 2010) (noting that it is improper to consider such arguments without granting the nonmovant an opportunity to file a sur-reply). Moreover, issues of waiver arise when a defendant fails to raise the affirmative defense of qualified immunity in a responsive pleading. See Sharp v. Johnson, 669 F.3d 144, 158 (3d Cir. 2012) (citing Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001)); Eddy v. V.I. Water & Power Auth., 256 F.3d 204, 209 (3d Cir. 2001). Because we find that Lincalis is entitled to summary judgment on the merits of Freeman's claims, we decline to address the issue of waiver of qualified immunity.

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

Defendants John D. McCarthy, Stephen L. Brighton, and James M. Fox were named in the original complaint that was filed on December 7, 2016 and, to date, have not been served in this case. Defendants McCarthy, Brighton and Fox have retired from their employment with the United States Probation Department, and the United States Attorney's Office has not received approval from the Department of Justice to represent these individuals. (See Docs. 47, 51).

The court must engage in a two-step process in determining whether to dismiss the non-served defendants or grant Freeman additional time to effect service. "First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995).

Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the

18

plaintiff's reasons for not complying with the time limit in the first place." Id. Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. Id.

In the present matter, Freeman failed to establish good cause. Freeman's *pro se* status is not good cause to excuse his failure to timely serve and identify these defendants. Veal v. United States, 84 F. App'x 253, 256 (3d Cir. 2004). Additionally, Freeman failed to timely request an enlargement of time to serve these defendants. See McCurdy v. Am. Bd. of Plastic Surgery, 157 F.3d 191, 196 (3d Cir. 1998) (noting that good cause is generally established when a plaintiff moves for an extension of time before the expiration of the 120 days service period). Thus, the court finds that Freeman failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendants within ninety days, a district court may either dismiss these defendants, or exercise its discretion to order that service be made within a specific time. Petrucelli, 46 F.3d at 1305; see also FED. R. CIV. P. 4(m). After the expiration of the ninety day time period set forth in Rule 4(m), the court notified Freeman that the action against defendants McCarthy, Brighton, and Fox was subject to dismissal, and directed him to show cause why the action against these defendants should not be dismissed pursuant to Rule 4(m). (Doc. 61). In response, Freeman requests that the court appoint counsel to help obtain addresses for McCarthy, Brighton, and Fox. (Doc. 63). Freeman also requests that the court order the United States Probation Office to provide the United States Marshal's Service with any and all files in their possession which may contain updated addresses for McCarthy, Brighton, and Fox.

19

(Id.)  It is Freeman's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion.  (See Doc. 9 ¶ 6) (advising Freeman that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

Freeman has been granted the opportunity to effect proper service, and was notified that the non-served defendants were subject to dismissal pursuant to Federal Rule of Civil Procedure 4(m).  (Doc. 61).  However, Freeman has failed to serve these defendants.  As a result, the non-served defendants will be dismissed from this action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as they have not been served within ninety days of the date on which they were named as defendants in this case.

## VI. Conclusion

For the reasons set forth above, defendants' motion (Doc. 47) for summary judgment will be granted.  The action against John D. McCarthy, Stephen L. Brighton, and James M. Fox will be dismissed pursuant to Federal Rule of Civil Procedure 4(m).  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: September 19, 2018