**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROCKY L. FREEMAN,** | : | **CIVIL ACTION NO. 1:16-CV-2422** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **JOSEPH LINCALIS, JOHN D.** | : | |
| **MCCARTHY, STEPHEN L.** | : | |
| **BRIGHTON, JAMES M. FOX,** | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Plaintiff Rocky Freeman ("Freeman"), an inmate in the custody of the
Federal Bureau of Prisons ("BOP"), is proceeding on an amended complaint
wherein he raises claims pursuant to the Federal Tort Claims Act ("FTCA"), 28
U.S.C. § 1346[1], and <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388
(1971).[2]  (Doc. 45).  Freeman names as defendants the United States of America,
Unit Manager Joseph Lincalis, former United States Probation Officer John D.
McCarthy, former Supervising United States Probation Officer Stephen L.
Brighton, and former Chief United States Probation Officer James M. Fox.  (<u>Id.</u>)

On September 19, 2018, the court granted defendants' first motion for
summary judgment.  (Docs. 64, 65).  Freeman subsequently filed an appeal to the

---

[1]  The Federal Tort Claims Act allows plaintiffs to seek damages from the
United States for certain torts committed by federal employees.  28 U.S.C. §§
1346(b), 2674.

[2]  In <u>Bivens</u>, the Supreme Court created a federal tort counterpart to the
remedy created by 42 U.S.C. § 1983 as it applies to federal officers.

United States Court of Appeals for the Third Circuit.  (Doc. 67).  On appeal,

Freeman argued that the court erred in treating his FTCA claim as though it were

based only the conduct of the BOP, rather than on the conduct of the probation

officers, and that the court improperly dismissed his <u>Bivens</u> claims against the

individual probation officers for failure to effect service.  <u>Freeman v. J. Lincalis</u>, No.

18-3315 (3d Cir.).  Freeman did not appeal the court's entry of summary judgment

on the <u>Bivens</u> claim against defendant Lincalis.  On August 9, 2021, the Third

Circuit granted defendants' unopposed motion to remand the matter to this court.

<u>Id.</u>, Doc. 69.

Presently before the court is defendants' motion (Doc. 82) to dismiss

pursuant to Federal Rule of Civil Procedure 12(b) and/or for summary judgment

pursuant to Federal Rule of Civil Procedure 56.[3]  Also pending is plaintiff's Rule 56

motion.  (Doc. 83).  For the reasons set forth below, the court will grant defendants'

motion (Doc. 82) and deny plaintiff's motion (Doc. 83).  Although the parties are

intimately familiar with the issues before the court, we proceed with a recitation of

the relevant facts.

---

[3]  The motion is filed on behalf of the United States of America and defendant
Lincalis.  The United States Marshals Service mailed a summons and complaint to
defendants McCarthy, Brighton, and Fox at the United States Probation Office in
Brooklyn, New York.  However, these individuals have resigned and retired from
the United States Probation Office, and no waivers of service have been returned by
them.  As set forth herein, we will dismiss the claims against defendants McCarthy,
Brighton, and Fox pursuant to Federal Rule of Civil Procedure 4(m) based on
Freeman's failure to properly effectuate service.

## I.   __Factual Background & Procedural History__[4]

In September 1996, Freeman was charged with narcotics conspiracy, two murders, and use of a firearm during and in relation to a crime of violence, in the United States District Court for the Eastern District of New York.  (Doc. 45 ¶ 11). Following a jury trial, Freeman was convicted of conspiracy to possess cocaine with intent to distribute, murder in the commission of a drug offense, and use of a firearm during and in relation to a crime of violence.[5]  (Id. ¶ 12).  He was only convicted of one of the two murders.  (Id.)  During the sentencing phase of his criminal proceedings, Freeman objected to portions of his Presentence Report ("PSR") because he claims it incorrectly contained information about the murder for which he was acquitted.  (Id. ¶¶ 13-15).  He claims the sentencing court ordered that all inaccurate information be stricken from his PSR, but the order was not carried out.  (Id. ¶ 16).  Freeman discovered the alleged error in his PSR in 2016,

---

[4]  Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the allegations of the amended complaint and the parties' Rule 56.1 statements of material facts.  (Docs. 45, 83-1, 93, 102).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

[5]  Freeman was sentenced to two consecutive life terms plus five years' incarceration.  See Freeman v. United States, No. 01-CV-0720, 2005 WL 1498289, *1 (E.D.N.Y. June 17, 2005).

after defendant Lincalis, his Unit Manager at FCI-Allenwood, prepared Escort Trip Authorization forms that contained inaccurate information.  (Id. ¶ 17).

Freeman alleges that the information about the second murder in his PSR caused the BOP to elevate his security and custody classifications.  (Id. ¶ 19; Doc. 83-1 ¶¶ 1-2).  As a result, he was confined in a maximum-security prison in Florence, Colorado ("USP-Florence"), where another inmate assaulted him with a razor blade.  (Doc. 45. ¶¶ 19-20).  Freeman asserts that the alleged error in his PSR was cured by an addendum, but the BOP SENTRY database[6] was never updated.  (Doc. 83-1 ¶¶ 4-7).

The parties agree that the BOP does not write, edit, or update an inmate's PSR.  (Doc. 93 ¶ 1; Doc. 102 ¶ 1).  An inmate's PSR is kept in the inmate's central file.  (Id. ¶ 2).

Correctional Systems[7] is a department within the BOP that sends and receives an inmate's central file when an inmate is either new to an institution or transfers out of an institution.  (Id. ¶ 3).  When an inmate is released from an

---

[6]  SENTRY is a real-time information system that collects, maintains, and tracks sensitive but unclassified inmate information.  See Privacy Impact Assessment for the SENTRY Inmate Management System, available at: https://www.bop.gov/foia/docs/sentry.pdf (last accessed March 11, 2023).

[7]  The Correctional Systems Department is responsible for many duties relating to the admission and release of inmates, including computing and tracking inmate sentence information, and coordinating and reviewing paperwork associated with inmate movement and release.  See BOP Program Statement 5800.15, Correctional Systems Manual, Ch. 1 § 101, available at: https://www.bop.gov/policy/progstat/5800_015_CN-01.pdf (last accessed March 16, 2023).

institution, Correctional Systems warehouses an inmate's central file until that inmate's period of supervised release expires.  (Id. ¶ 4).

Inmates are not permitted to maintain copies of their PSRs.  (Id. ¶ 5).  When an inmate notes a mistake in his PSR, the PSR is corrected through a process that involves United States Probation, the inmate, and the inmate's attorney.  (Id. ¶ 6; Doc. 83-1 ¶ 3).  Defendants contend that this process does not involve the BOP, whereas Freeman contends that the BOP is involved to the extent that it must initiate the process for the inmate pursuant to Program Statement 5800.17.  (Doc. 93 ¶ 6; Doc. 102 ¶ 6; Doc. 103-1 at 52).  If an inmate notes a discrepancy in his PSR, a Correctional Systems specialist or a case manager will contact the BOP's Designation and Sentence Computation Center ("DSCC") to ascertain whether a new or amended PSR exists.  (Doc. 93 ¶ 7; Doc. 102 ¶ 7).  The parties agree that the BOP does not discuss or make available an inmate's PSR to other inmates.  (Id. ¶ 8).

Defendants maintain that the BOP does not have a policy that requires Correctional Systems or the Unit Team to verify the accuracy of an inmate PSR, nor is there a policy that requires the Correctional Systems or Unit Team to routinely seek out updated or amended PSRs.  (Doc. 93 ¶ 9).  Freeman again contends that pursuant to Program Statement 5800.17, staff must take reasonable steps to ensure the accuracy of challenged information.  (Doc. 102 ¶ 9).
Defendant Lincalis was employed as a Unit Manager at the Allenwood Federal Correctional Institution, in White Deer, Pennsylvania ("FCI-Allenwood"), during all times relevant to the instant action.  (Doc. 93 ¶ 10; Doc. 102 ¶ 10).  As a Unit

Manager at FCI-Allenwood, defendant Lincalis made comments on Escort Trip
Authorization forms when inmates housed in his unit went on outside trips. (Id. ¶
11). Defendant Lincalis' comments on the Escort Trip Authorization forms usually
concerned the length of an inmate's sentence, information regarding prior outside
trips, and information regarding the inmate's criminal history and underlying
charge. (Id. ¶ 12). Defendant Lincalis also included other information that he
believed might assist correctional officers who escort the inmates on outside trips,
such as mental health issues, history of violence, or escape attempts and history.
(Id.) In the matter *sub judice*, the parties dispute whether defendant Lincalis used
Freeman's PSR to make comments on the Escorted Trip Authorization forms. (Id.
¶ 14). Defendant Lincalis maintains that he utilized the Security/Designation Data
screen, which is found on the BOP SENTRY database. (Doc. 93 ¶ 14). At the same
time, the parties agree that defendant Lincalis does not write, edit, or update any
inmate's PSR. (Doc. 93 ¶ 15; Doc. 102 ¶ 15). The parties also agree that defendant
Lincalis does not write, edit, or update an inmate's Security/Designation Data
information in the BOP's SENTRY database. (Id. ¶ 16).

Defendant Lincalis asserts that when he made comments on Freeman's
Escorted Trip Authorization forms, he did not have actual or other knowledge that
Freeman's PSR contained inaccurate information. (Doc. 93 ¶ 17). Freeman
believes that defendant Lincalis knew or should have known that the PSR was
inaccurate and that he was negligent in failing to locate a missing addendum. (Doc.
83-1 ¶¶ 11-12; Doc. 102 ¶ 17). The BOP does not have a policy that specifies what

information defendant Lincalis should include or exclude on an Escorted Trip Authorization form. (Doc. 93 ¶ 18; Doc. 102 ¶ 18). Defendant Lincalis' comments on the Escorted Trip Authorization form were based on his experience as a BOP employee. (Doc. 50 ¶ 18; Doc. 54 ¶ 18). The information that defendant Lincalis included on a form was intended to provide the escorting correctional officers with information to ensure their safety and public safety. (Id.)

After Lincalis completed Freeman's Escorted Trip Authorization forms, Freeman became aware of the error in his PSR and informed his unit team that his PSR contained inaccurate information. (Id. ¶ 19). The case manager assigned to Freeman's unit then contacted the United States Probation Office and obtained an amended PSR. (Doc. 93 ¶ 20; Doc. 102 ¶ 20).

The United States Probation Office ("USPO") is part of the judicial branch, under the Administrative Office of the United States Courts ("AOUSC"). (Id. ¶ 21). The Director of the AOUSC acts as the head of a federal agency for purposes of considering FTCA claims allegedly caused by the negligent or wrongful conduct of an officer or employee of the federal courts. (Id. ¶ 22). Administrative tort claims allegedly caused by the negligent or wrongful conduct of an officer or employee of the federal courts must be presented to the AOUSC within two years of the claim arising. (Id. ¶ 23). The Office of General Counsel with the AOUSC maintains an electronic database and a paper filing system to track all administrative claims filed under the FTCA that are submitted directly to the AOUSC or forwarded to the AOUSC by federal courts or court units. (Id. ¶ 24). Defendants assert that the

Office of General Counsel of the AOUSC has searched its electronic and paper

records and certified that it has no record of any administrative tort claim filed by

Freeman.  (Doc. 93 ¶ 25).  In response, Freeman contends that on April 1, 2016, he

submitted his FTCA Standard Form 95 ("SF-95")[8] to the USPO.  (Doc. 102 ¶¶ 23-25).

## II.   Legal Standards

### A.   Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss an

action for lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  Motions

brought under Rule 12(b)(1) may present either a facial or factual challenge to the

court's subject matter jurisdiction.  Gould Elecs., Inc. v. United States, 220 F.3d 169,

176 (3d Cir. 2000).  In reviewing a facial challenge under Rule 12(b)(1), the standards

associated with Rule 12(b)(6) are applicable.  See id.  In this regard, the court must

accept all factual allegations in the complaint as true, and the court may consider

only the complaint and documents referenced in or attached to the complaint.  In a

factual challenge to the court's subject matter jurisdiction, the court's analysis is not

---

[8] The SF-95 is used to present claims against the federal government under the FTCA for property damage, personal injury, or death allegedly caused by a federal employee's negligence or wrongful act or omission occurring within the scope of his or her employment.  See The United States Department of Justice, Public Documents, available at: https://www.justice.gov/civil/documents-and-forms-0 (last accessed March 11, 2023).  The SF-95 requires, *inter alia*, a description of the event and injuries sustained and a claim for monetary damages in a sum certain. Id.  The SF-95 can be obtained from the relevant federal agency, by written request to the Department of Justice, or online on the Department of Justice's website.  Id. The completed form must be presented to the relevant federal agency within two years of the incident.  Id.

limited to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  Instead, the court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, to resolve any factual issues bearing on jurisdiction.  Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997).

Once the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists.  Mortensen, 549 F.2d at 891.  If a dispute of material fact exists, "the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction."  McCann v. Newman Irrevocable Tr., 458 F.3d 281, 290 (3d Cir. 2006); see also Berardi v. Swanson Mem'l Lodge No. 48, 920 F.2d 198, 200 (3d Cir. 1990) (stating that a district court must ensure that a plaintiff has "had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing," to support his claim of jurisdiction (citation omitted)).

**B.     Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)

9

(quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  <u>See Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  <u>Id.</u>; <u>see also</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### C.   Federal Rule of Civil Procedure 56

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See Pappas, 331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment concurrently.  See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. Fed. Express Corp., 996 F.Supp.2d 302, 312 (M.D. Pa. 2014); 10A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2720 (3d ed. 2015). When doing so, the court is bound to view the evidence in the light most favorable

to the non-moving party with respect to each motion.  FED. R. CIV. P. 56; Lawrence,

527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir.

1968)).

## III.   Discussion

### A.   FTCA Claim

#### 1.   The United States is the only Proper Party

It is well-settled that the only proper defendant for claims brought under the

FTCA is the United States of America, and not a federal agency sued in its own

name or individual federal employees sued in their official capacities.  See CNA v.

United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008); Dambach v. United States, 211 F.

App'x 105, 108 (3d Cir. 2006).[9]  Consequently, we will dismiss the FTCA claim

against the BOP and the USPO, and, in turn, address the FTCA claim against the

United States, the proper defendant subject to Freeman's FTCA claim.

#### 2.   Failure to Exhaust the FTCA Claim

The United States moves to dismiss Freeman's FTCA claim, contending that

the court lacks jurisdiction to hear this claim because Freeman failed to exhaust his

administrative remedies under the FTCA.  (Doc. 94 at 20-25).

Under the FTCA, an "action shall not be instituted upon a claim against the

United States for money damages" arising from injury caused by the negligence,

---

[9]  The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

wrongful acts, or omission of any federal government employee while acting in the scope of his employment unless the claimant has first exhausted his administrative remedies.  28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 107 (1993).  The claimant must present his administrative tort claim to the appropriate federal agency within two years of its accrual.  28 U.S.C. § 2401(b); Tucker v. United States Postal Serv., 676 F.2d 954, 956 (3d Cir. 1982).  Presentment of an administrative tort claim to the appropriate federal agency is a jurisdictional requirement that cannot be waived.  McNeil, 508 U.S. at 106, 111; Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003); Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971).  A claim is deemed to be "presented" when the federal agency receives written notification of the alleged tortious incident and the alleged injuries, together with a claim for money damages in a sum certain.  28 C.F.R. § 14.2(a).  If the receiving federal agency fails to make a final disposition of the claim within six months from the time it is filed, that failure is "deemed a final denial of the claim" for purposes of commencing suit under the FTCA.  28 U.S.C. § 2675(a).  A plaintiff asserting a FTCA claim bears the burden of establishing that he has met these requirements.  Livera v. First Nat. State Bank of New Jersey, 879 F.2d 1186, 1195 (3d Cir. 1989).

It is undisputed that the AOUSC did not receive a SF-95 form from Freeman.  Defendants submitted a sworn declaration from Tiffany Lewis, Paralegal Specialist at the Office of the General Counsel with the AOUSC, who confirms that an administrative tort claim was never filed by Freeman.  (Doc. 93-4).  Freeman does not dispute his failure to submit a SF-95 form to the AOUSC; rather, he argues that

his Correctional Unit Counselor provided him with the incorrect address to mail his administrative tort claim. (Doc. 101 at 26; Doc. 102 ¶¶ 23-25, Doc. 112 at 4-6). Freeman contends that he submitted an administrative claim dated April 1, 2016, to the "United States Probation Department" in Brooklyn Heights, New York. (Doc. 45 ¶ 27; Doc. 45-1 at 34). He admits that he did not receive a response. (Id.) And it is equally clear that he took no action to determine whether the appropriate agency actually received his administrative claim. Because he did not receive a response, Freeman argues that the agency failed to make a final disposition of his claim within six months in accordance with 28 U.S.C. § 2675(a), and this failure is deemed a final denial of the claim. (Doc. 101 at 26; Doc. 112 at 5). This argument is unavailing because it is Freeman's threshold burden to demonstrate that he satisfied the presentment requirement. Livera, 879 F.2d at 1195. Clearly, he cannot meet this burden; to the contrary, his argument is premised upon the acknowledgement that he did not submit his claim to the *appropriate* federal agency. 28 U.S.C. 2401(b); see also 28 C.F.R. § 14.2(a) ("[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain . . . ."). We likewise reject Freeman's argument that he substantially complied with the FTCA. The mistaken mailing excuse squarely demonstrates a lack of compliance. In McNeil, the Supreme Court held that the FTCA's exhaustion provisions are clear and that

*pro se* litigants are not excused from compliance with those provisions.  See McNeil, 508 U.S. at 113.

In addition, the undisputed evidence demonstrates that Freeman did not include a physical injury in his administrative tort claim.  (Doc. 45-1 at 34).  He generally stated that he endured "pain" and "suffering."  (Id.)  The purpose of the presentment requirement is to provide the relevant federal agency with notice and an opportunity to settle the administrative tort claim.  Tucker, 676 F.2d at 958-59.  In Freeman's case, the inclusion of any physical injuries he sustained would place the agency on notice and would be relevant for purposes of potential settlement.

It is clear that Freeman did not fulfill the FTCA's prerequisite of presentment of an administrative tort claim.  He has not provided any evidence to support a finding that a proper FTCA claim was filed.  Because Freeman has not met the FTCA's jurisdictional requirements, we will dismiss the FTCA claim.  See, e.g., White-Squire v. United States Postal Service, 592 F.3d 453, 458 (3d Cir. 2010) ("a claimant's failure to present her FTCA claim to the appropriate agency with a sum certain, as required by § 2675(b), compels the conclusion that a district court lacks subject matter jurisdiction over the claim"); Accolla v. United States Gov't, 369 F. App'x 408, 409-10 (3d Cir. 2010) (finding the district court properly dismissed FTCA claim where the plaintiff filed federal suit prior to exhausting administrative remedies).

### 3.   **Merits of the FTCA Negligence Claim**

Alternatively, the United States asserts that they are entitled to summary judgment on Freeman's negligence claim because the BOP did not breach a duty owed to Freeman, and the conduct of BOP staff was not the proximate cause of any injury.  (Doc. 94 at 25-33; Doc. 104 at 8-10).

The FTCA waives the sovereign immunity of the United States for torts of federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); see also 28 U.S.C. § 2674 (providing that, for tort claims, the United States shall be liable "in the same manner and to the same extent as a private individual under like circumstances"); Sosa v. Alvarez-Machain, 542 U.S. 692, 700 (2004) (stating that "[t]he FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render the Defendants liable in tort as a private individual would be under like circumstances'" (quoting Richards v. United States, 369 U.S. 1, 6 (1962))). As this provision makes clear, in conjunction with the jurisdictional grant over FTCA cases in 28 U.S.C. § 1346(b), the extent of the United States' liability is generally determined by reference to state law.  Molzof v. United States, 502 U.S. 301, 305 (1992).  In this case, the allegedly tortious conduct occurred in

Pennsylvania.[10]  Thus, the court refers to Pennsylvania tort law to assess the extent of the United States' potential liability on Freeman's claim.

Under Pennsylvania law, in order to "establish a cause of action for negligence, the plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." Northwest Mutual Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005) (citing Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. Ct. 1994)).  In accordance with this standard, a plaintiff bears the burden of proving by a preponderance of the evidence that the defendant's negligence was the proximate cause of his injury.  Skipworth v. Lead Indus. Ass'n, 690 A.2d 169, 172 (Pa. 1997).  Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury alleged.  Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).

With regard to the first element, the BOP, under the direction of the Attorney General, has a broad statutory duty to, among other things, "provide suitable quarters and provide for the safekeeping, care . . . [and] protection . . . of all persons charged with or convicted of offenses against the United States."  18 U.S.C. §§ 4042(a)(2)-(3).  Although the government is not "an insurer of inmate safety," Sanchez v. State of New York, 99 N.Y.2d 247, 253 (2002), prison officials have a duty of "ordinary diligence to keep prisoners safe from harm," Hossic v. United States,

---

[10]  Freeman was housed at USP-Allenwood, in the Middle District of Pennsylvania, when he discovered the alleged error in his PSR.

682 F. Supp. 23, 25 (M.D. Pa. 1987) (noting that 18 U.S.C. § 4042 (1979) establishes "ordinary diligence" standard of care for prisoner negligence suits under the FTCA).

As to the whether the BOP breached that duty, Freeman must establish the manner in which prison officials "deviated from the general standard of care expected under the circumstances."  Martin v. Evans, 551 Pa. 496, 711 A.2d 458, 461 (Pa. 1998).  The record reflects that the BOP does not make any changes to an inmate's PSR, and the BOP was not aware of any error in Freeman's PSR.  (Doc. 93 ¶¶ 1, 17; Doc. 102 ¶¶ 1, 17).  Instead, the BOP simply maintains the PSR in the inmate's central file and keeps the central file until the inmate is released from prison.  (Id. ¶ 2).  The record further reflects that if an inmate notes a mistake in the PSR, the PSR is corrected with involvement of the United States Probation Office, the inmate, and the inmate's attorney.  (Id. ¶ 6; Doc. 83-1 ¶ 3).  A Correctional Systems specialist or a case manager will then contact the BOP's DSCC to ascertain whether a new or amended PSR exists.  (Doc. 93 ¶ 7; Doc. 102 ¶ 7).

Defendants submitted a sworn declaration from the BOP Supervisory Correctional Systems Specialist, wherein he confirms that the BOP does not have any policy that requires prison staff to verify the accuracy of an inmate PSR, nor is there any policy that requires prison staff to routinely seek out updated or amended PSRs.  (Doc. 93-2, Declaration of D. Krebs, BOP Supervisory Correctional Systems Specialist, ¶ 10).  In response, Freeman cites to Program Statement 5800.17, which provides, in part, "if an inmate challenges information in the PSR, staff instruct the

inmate to prepare a written challenge, which staff then forward to the appropriate

U.S. Probation Office (USPO)."  (Doc. 103-1 at 52, BOP Program Statement 5800.17

§ 11(c); <u>see</u> <u>also</u> Doc. 102 ¶¶ 6, 9).  "[In the absence of a court order], USPO

procedures, however, do not allow changes or addendums to be made to the

Presentence Investigation Report since it is a court document."  (Doc. 103-1 at 52

Program Statement 5800317 § 11(c)).  When Freeman notified his unit team of the

error in his PSR, the case manager assigned to his unit promptly contacted United

States Probation and obtained an amended PSR, in accordance with BOP policy.

<u>See</u> <u>id.</u> (providing when the USPO verifies that a PSR contains inaccurate

information (as claimed by the inmate), USPO shall provide the corrected

document to the BOP, and BOP staff shall attach the document to the inmate file).

Thus, even if § 4042(a) imposes on the BOP a general duty of care to safeguard

prisoners, Freeman failed to prove a breach of any BOP duty owed to him.  <u>See</u>

<u>Hossic</u>, 682 F.Supp. at 25.

Likewise, with respect to the third and fourth elements, the evidence fails to

show any causal connection between the conduct of prison staff and Freeman's

resulting injury.  Freeman claims that the error in his PSR "was one of the prime

factors" in his custody and security classifications, which allegedly caused him to be

designated to USP-Florence where he was assaulted by another inmate.  (Doc. 45 ¶

19).  Freeman was sentenced to two consecutive life terms plus five years'

incarceration.  He has presented no evidence that his custody classification would

have been different if the BOP had received the addendum to the PSR, which

clarified that he was only convicted of one murder.  Freeman has failed to establish a causal connection between the error with his PSR and the assault at USP-Florence.

As stated, the BOP was not aware of any error in Freeman's PSR.  Once Freeman questioned the accuracy of his PSR—a court document that the BOP does not have legal authority to amend—the BOP contacted the United States Probation Office to notify it of Freeman's challenge, ultimately receiving an amended PSR. The BOP cannot be faulted for relying on the PSR initially provided by the United States Probation Office.  Under these circumstances, the BOP followed appropriate policy and did not abuse its discretion when it relied upon Freeman's initial PSR in making decisions related to his classification and security matters.  There is no evidence that establishes a genuine issue of material fact that the BOP could have reasonably known that relying on the PSR provided by the United States Probation Office to determine Freeman's custody classification and security level would result in an assault by another inmate.  The BOP is required only to protect a prisoner from danger that is known or can reasonably be apprehended, not to ensure the prisoner's safety.  Hossic, 682 F.Supp. at 25.

The record before the court is devoid of any evidence that the BOP breached a duty that it owed to Freeman, or that the conduct of BOP officials proximately caused his injury.  Summary judgment in favor of the United States is appropriate.

### B.      Due Process Claim

In his motion for summary judgment, Freeman asserts that the incorrect information in his PSR resulted in an improper prison classification, which in turn violated his right to due process.  (Docs. 83, 84).  The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  It is well-established that an inmate does not have a constitutional right to any particular custody or security classification.  Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242.  Although Freeman maintains that the incorrect information in his PSR resulted in an improper prison classification, he has no constitutional right to a particular classification.  Additionally, to the extent Freeman contends that he has an independent state created liberty interest in avoiding inaccurate information in his PSR, this claim fails because there is no liberty interest in procedural requirements or process.  See Williams v. Fed. Bureau of Prisons, 85 F. App'x 299, 304 (3d Cir. 2004) (holding that, absent a protected liberty interest, the Due Process Clause does not afford a prisoner any right to have inaccurate information in his presentence report expunged from his prison file).  Moreover, as previously noted, there is no record evidence establishing that Freeman's prison classification would have been different if his original PSR accurately reflected his criminal convictions.  He has thus failed to state a cognizable due process claim.

### C.     Insufficient Service of Process Regarding the <u>Bivens</u> claim

Defendants McCarthy, Brighton, and Fox have not been served process. Pursuant to Federal Rule of Civil Procedure 4(m), a plaintiff has 90 days from the date he filed his complaint to serve the complaint on the defendants.  FED. R. CIV. P. 4(m).  Upon a showing of good cause for the failure to serve, the court must extend the time for service; the court can, at its discretion, extend the time for service even if plaintiff has not shown good cause for the delay.  FED. R. CIV. P. 4(m).  The factors a court should consider in evaluating whether good cause exists are: (1) the reasonableness of the plaintiff's efforts to effect service; (2) prejudice to the defendant because of untimely service; (3) whether the plaintiff has moved for an enlargement of time; and (4) whether the statute of limitations will bar the plaintiff's claims if the action is dismissed.  See <u>MCI Telecomms. Corp. v. Teleconcepts, Inc.</u>, 71 F.3d 1086, 1097-98 (3d Cir. 1995).

Freeman's original complaint was filed on December 1, 2016, and the amended complaint was filed on August 1, 2017.  (Docs. 1, 45).  The United States Marshals Service mailed summonses and copies of the complaint to the individually named defendants on December 29, 2016, mailed a copy of the summonses and complaint to the Attorney General on January 19, 2017, and personally served the United States Attorney's Office on January 19, 2017.  (Docs. 12-17, 19-21).  Because defendants McCarthy, Brighton, and Fox were no longer employed by the United States Probation Office, they were not able to be properly served.

The court then granted Freeman an additional opportunity to serve defendants McCarthy, Brighton, and Fox.  We ordered defendants to provide the court, under seal, the last known addresses of these individuals.  (Doc. 113).  In response, defendants informed the court that McCarthy resigned from the federal judiciary on December 15, 2004, Brighton retired from the federal judiciary on January 31, 2008, and Fox retired from the federal judiciary on January 3, 2004. (Doc. 115).  Defendants further advised that when an employee separates from the judiciary, their personnel file is sent to the National Personnel Records Center, in St. Louis, Missouri.  (See id.)  After receiving this information, Freeman surmised that the United States could provide the actual locations of defendants McCarthy, Brighton, and Fox, and that the United States Marshals Service can locate these defendants.  (Doc. 118).  He also requested the appointment of counsel to assist in locating defendants' whereabouts.  (Id.)  We conditionally granted Freeman's request for counsel and referred the matter to the Federal Bar Association's Pro Bono Committee for purposes of obtaining counsel for Freeman.  (Doc. 119).  The Pro Bono Chair informed the court that a volunteer attorney was not available to represent Freeman.  (Doc. 121).  Even after receiving the additional information provided by defendants, Freeman has made no further attempts to serve defendants McCarthy, Brighton, or Fox, or to obtain their addresses.  Accordingly, the court now finds that Freeman lacks good cause for his failure to effectuate service.  Moreover, even if McCarthy, Brighton, and Fox were properly served, they would be immune from suit on the basis of quasi-judicial immunity.  Quasi-judicial

23

officers, such as probation officers, enjoy absolute judicial immunity when they act pursuant to a court directive, including preparing presentence reports for the court. See Stankowski v. Farley, 251 F. App'x 743, 746 (3d Cir. 2007) (holding that probation officer was absolutely immune from suit for preparing a presentence report for the trial court).

Because Freeman is solely responsible for effecting service upon defendants McCarthy, Brighton, and Fox, and has yet to do so, the action against these individuals will be dismissed pursuant to Rule 4(m).

**IV.     Conclusion**

Defendants' motion (Doc. 82) to dismiss and for summary judgment will be granted and plaintiff's motion (Doc. 83) for summary judgment will be denied.  We will also dismiss the action against defendants McCarthy, Brighton, and Fox for insufficient service of process pursuant to Federal Rule of Civil Procedure 4(m).

An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:        March 17, 2023